UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELLE LALLI,<br><br>       Plaintiff,<br><br>   -v-<br><br>WARNER BROS. DISCOVERY, INC.;<br>WARNER MEDIA, LLC U.S. SEVERANCE<br>PLAN,<br><br>       Defendants. | Civil Action No. 1:24-cv-03178-LJL |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
AND MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF GEORGIA**

---

**LITTLER MENDELSON, P.C.**
900 Third Avenue
New York, New York 10022
212.471.4404
Attorneys for Defendant

*Of Counsel and on the brief:*
William J. Anthony, Esq.

# TABLE OF CONTENTS

**PAGE**

I. PRELIMINARY STATEMENT ..................................................................... 1

II. STATEMENT OF RELEVANT FACTS ........................................................ 5

    A. Overview of Plaintiff's Employment .................................................. 5

    B. Plaintiff Has Alleged No Facts To Show She Experienced The Impact of Alleged Discrimination or Retaliation in New York ................................ 6

    C. Termination of Plaintiff's Employment with WBD. .............................. 8

III. LEGAL ARGUMENT AND CITATION OF AUTHORITIES......................... 9

    A. Plaintiff's Amended Complaint Must Be Dismissed Because it Fails to Comply With Fed. R. Civ. P. 8 ...................................................... 9

    B. Motion to Dismiss ...................................................................... 11

        1. Legal Standard for Motion to Dismiss.................................... 11

        2. Plaintiff's NYSHRL and NYCHRL Claims Must Be Dismissed For Lack of Jurisdiction ....................................................... 12

    C. Plaintiff's Remaining Claims Should Be Transferred To The United States District Court For The Northern District of Georgia. ......................... 155

        1. The Northern District of Georgia Is A Proper Transferee District ........ 177

        2. Interests of Justice Favor Transferring This Case to the Northern District of Georgia ............................................................ 188

            a. The Private Interest Factors ...................................... 199

                (1) The Parties' Choice of Forum......................... 199

                (2) The Convenience of the Parties Weighs in Favor of Transfer to the Northern District of Georgia ................... 20

                (3) Plaintiff's Claims Arose in the Northern District of Georgia........................................................ 211

                (4) The Convenience of Witnesses Weighs in Favor of Transfer to the Northern District of Georgia ................. 222

# TABLE OF CONTENTS
### (CONTINUED)

                                                                    **PAGE**

    (5)    The Location of Relevant Documents and the Relative Ease of Sources of Proof ................................ 233

  b.    The Public Interest Factors Favor Transfer to the Northern District of Georgia. .................................................................. 244

    (1)    The Forum's Familiarity with the Governing Law........ 255

    (2)    Relative Means of the Parties. ....................................... 266

IV.    CONCLUSION.............................................................................................. 266

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................11, 12

*Bahr v. City University of New York/York College*,
    No. 15-CV-4380 (MKB), 2016 U.S. Dist. LEXIS 171492 (E.D.N.Y. Dec. 9,
    2016) ..............................................................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................11, 12

*Benham v. eCommission Solutions, LLC*,
    118 A.D.3d 605 (1st Dept. 2014)....................................................................13

*Brown v. Dow Corning Corp.*,
    No. 93CIV.5510(AGS), 1996 WL 257614 (S.D.N.Y. May 15, 1996)...................20

*Bullard v. MRA Holding, LLC*,
    292 Ga. 748 (2013) ........................................................................................23

*Burges v. Allstate Ins. Co.*,
    334 F. Supp. 2d 1351 (N.D. Ga. 2003) .............................................................23

*Citigroup Inc. v. City Holding Co.*,
    97 F. Supp.2d 549 (S.D.N.Y. 2000)..................................................................16

*Cohn v. Keyspan Corp.*,
    713 F. Supp. 2d 143 (E.D.N.Y. 2010) .............................................................10

*CVS Pharmacy, Inc. v. AstraZeneca Pharms., L.P.*,
    No. 19-cv-10049 (CM), 2020 WL 4671659 (S.D.N.Y. Aug. 12, 2020)................18

*de Fries v. Wells Fargo Bank N.A.*,
    No. 20-CV-10247 (CM), 2020 WL 8512859 (S.D.N.Y. Dec. 7, 2020) ................19

*ESPN v. Quicksilver, Inc.*,
    *581 F. Supp. 2d 549-50 (S.D.N.Y. 2008)* .......................................................19, 22

*Fireman's Fund Ins. Co. v. Pers. Communs Devices, LLC*,
    No. 09-cv-1349(SHS), 2009 WL 10666098 (S.D.N.Y. July 9, 2009)...................20

*Freeman v. Hoffmann-La Roche*,
    No. 06-13497, 2007 U.S. Dist. LEXIS 23132 (S.D.N.Y. Mar. 21, 2007)..............16

# TABLE OF AUTHORITIES
(continued)

**Page**

*Fried v. LVI Servs.*,
    500 Fed. Appx. 39 (2d Cir. 2012) ............................................................13

*Garcia v. Pearson Educ., Inc.*,
    No. 15 Civ. 7289 (KPF), 2016 WL 5921083 (S.D.N.Y. Oct. 7, 2016) ............................18, 20

*Ghorpade v. MetLife, Inc.*,
    No. 14-CV-4379 JPO, 2014 WL 7008954 (S.D.N.Y. Dec. 12, 2014)....................................13

*Gregory v. Daly*,
    243 F.3d 687 (2d Cir. 2001)..............................................................4

*Guardian Life Insurance Company of America v. Coe*,
    2024 WL 1161361 (S.D.N.Y. March 19, 2024) ......................................................22

*Hoffman v. Parade Pbls.*,
    15 N.Y.3d 285 (2010) ........................................................13, 21

*JM Smith Corp. v. AstraZeneca Pharms. L.P.*,
    No. 19 Civ. 7233 (CM), 2020 WL 4605241 (S.D.N.Y. Aug. 11, 2020) ................................18

*Jones v. Nat'l Commc'ns & Surveillance Networks*,
    266 F. App'x 31 (2d Cir. 2008) ........................................................9

*Kramer v. Vendome Grp. LLC*,
    No. 11 Civ. 5245(RJS), 2012 WL 4841310 (S.D.N.Y. Oct. 4, 2012) ....................................4

*In re Lehman Bros. Holdings Inc.*,
    594 B.R. 33 (Bankr. S.D.N.Y. 2018)......................................................22

*Lia v. Saporito*,
    909 F.Supp.2d 149 (E.D.N.Y.2012) ......................................................4

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
    17 F.Supp.3d 385 (S.D.N.Y. 2014)......................................................22

*Lonesome v. Lebdeff*,
    141 F.R.D. 397 (1992) ........................................................10

*Louis Vuitton Malletier S.A. v. LY USA*,
    676 F.3d 83 (2d Cir. 2012)..............................................................4

*Meilus v. Rest. Opportunities Ctr. United, Inc.*,
    No. 21-CV-02554 (CM), 2021 WL 4868557 (S.D.N.Y. Oct. 15, 2021) ............................13, 14

*Pakniat v. Moor*,
    145 N.Y.S.3d 30 (2021) ........................................................14

# TABLE OF AUTHORITIES
(continued)

**Page**

*Paulson v. Guardian Life Insurance Company of America*,
614 F. Supp. 3d 1 (S.D.N.Y. 2022).................................................................20, 21, 22

*Phillips v. Reed Group, Ltd.*,
955 F. Supp. 2d 201 (S.D.N.Y. 2013).......................................................................24

*Reddy v. Catone*,
No. 5:13-CV-707 (MAD)(ATB), 2014 U.S. Dist. LEXIS 79622 (N.D.N.Y.
June 11, 2014), *aff'd* 630 Fed Appx. 120 (2d Cir. 2015).......................................11

*Robles v. Cox and Co.*,
841 F. Supp. 2d 615 (E.D.N.Y. 2012) .....................................................................13

*Royal Ins. Co. of America v. United States*,
998 F. Supp. 351 (S.D.N.Y. 1998)..........................................................................24

*Salahuddin v. Cuomo*,
861 F.2d 40 (2d Cir. 1988).......................................................................................10

*Starr Indemmity & Liability Co.*,
324 F. Sup. 3d .........................................................................................................16

*Starr Indemmity & Liability Co. v. Brightstar Corp.*,
324 F. Sup. 3d 421, 433-34 (S.D.N.Y. Aug. 16, 2018) .............................15, 17, 23

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988)...................................................................................................15

*Syeed v. Bloomberg L.P.*,
No. 1:20-cv-7464-GHW, 2021 WL 4952486 ..........................................................13

*Targum v. Citrin Cooperman & Co., LLP*,
No. 12 Civ. 6909 (SAS), 2013 WL 6087400 (S.D.N.Y. Nov. 19, 2013) ................12

*Tlapanco v. Elges*,
207 F. Supp. 3d 324 (S.D.N.Y. 2016)......................................................................22

*Van Dusen v. Barrack*,
376 U.S. 612 (1964)............................................................................................15, 17

*Vangas v. Montefiore Medical Center*,
823 F.3d 174 (2d Cir. 2016) ....................................................................................14

*Wolf v. Imus*,
170 A.D.3d 563, 96 N.Y.S. 3d 54 (2019) ...............................................................14

# TABLE OF AUTHORITIES
(continued)

**Page**

**Statutes**

28 U.S.C. § 1391(b) ..............................................................................................17

28 U.S.C. § 1404(a) ........................................................................................ *passim*

42 U.S.C. § 1981 ...................................................................................................1

42 U.S.C. § 2000e-5(f)(3) ...................................................................................17

New York City Human Rights Law § 8-107 ........................................................1

**Other Authorities**

Federal Rule of Civil Procedure, Rule 8 ....................................................1, 9, 10, 24

Federal Rule of Civil Procedure, Rule 8(d) ..........................................................9

Federal Rule of Civil Procedure, Rule 12(b)(6) ...............................................2, 24

## I.    PRELIMINARY STATEMENT

Pursuant to the Court's October 18, 2024 Order [Dkt. No. 40], Defendant Warner Bros. Discovery, Inc. ("WBD") renews its Motion to Dismiss Plaintiff's amended complaint and transfer any remaining claims to the Northern District of Georgia, and Defendant Warner Media, LLC U.S. Severance Plan ("WM Severance Plan") joins in Defendant WBD's Motion. Plaintiff Elle Lalli's ("Lalli" or "Plaintiff") amended complaint should be dismissed under Federal Rule of Civil Procedure, Rule 8.  On October 18, 2024, Plaintiff filed her seventy-five-page complaint in this Court. [Dkt. No. 41 ("Amended Complaint" or "FAC")].  In her lengthy Amended Complaint, Plaintiff asserts a total of seventeen (17) causes of action under federal and New York state law against Defendants WBD and WM Severance Plan (collectively as "Defendants"), including:

> (1) race discrimination in violation of Title VII;
> (2) race discrimination in violation of 42 U.S.C. § 1981;
> (3) race discrimination in violation of New York State Human Rights Law, N.Y. Exec, Law § 296 ("NYSHRL");
> (4) race discrimination in violation of New York City Human Rights Law § 8-107 ("NYCHRL");
> (5) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA");
> (6) age discrimination in violation of NYSHRL;
> (7) age discrimination in violation of NYCHRL;
> (8) sex discrimination in violation of Title VII;
> (9) sex discrimination in violation of NYSHRL;
> (10) sex discrimination in violation of NYCHRL;
> (11) disability discrimination in violation of the Americans with Disabilities Act ("ADA");
> (12) disability discrimination in violation of NYSHRL;
> (13) disability discrimination in violation of NYCHRL;
> (14) violation of the Equal Pay Act ("EPA");
> (15) breach of the implied covenant of good faith and fair dealing;
> (16) intentional infliction of emotional distress; and
> (17) ERISA 502(a)(1)(b) and (a)(3) severance claims.[1]

---

[1] While it is unclear from Plaintiff's scattershot and prolix Amended Complaint, Defendants understand the first sixteen (16) claims are brought solely against Defendant WBD and the seventeenth claim is brought solely against Defendant WM Severance Plan.

Plaintiff's meandering, lengthy complaint contains 233 paragraphs, with 116 paragraphs that contain alleged facts.  Other than designating certain groups of paragraphs as "Adverse Actions" and one group of paragraphs as "Adverse Action and Protected Activity," the Complaint makes little attempt to indicate which facts are alleged to support any of the sixteen separate causes of action.  Instead, the Complaint begins each cause of action with a boilerplate statement that all preceding paragraphs are repeated and realleged by reference.  Pursuant to Rule 8 and the controlling law discussed below, Plaintiff's Amended Complaint should be dismissed and Plaintiff should be required to file a complaint that contains a short and plain statement of her claims.

The Court should also grant Defendants' motion under Rule 12(b)(6) and dismiss Plaintiff's claims brought under New York statutory law (Counts 3-4, 6-7, 9-10 and 12-13), and grant Defendants' motion to transfer any remaining claims to the Northern District of Georgia (Counts 1-2, 5, 8, 11, and 14-17) pursuant to 28 U.S.C. Section 1404(a).  Despite the length of Plaintiff's Amended Complaint, the relevant facts for purposes of Defendants' Rule 12(b)(6) motion to dismiss and Defendants' motion to transfer venue are simple.  Plaintiff resides in Georgia and worked out of her Atlanta, Georgia home or at WBD's offices at 1050 Techwood Drive NW, Atlanta, GA throughout her entire employment with WBD and WarnerMedia from April 15, 2020 until March 2, 2024.  (*see* FAC ¶ 2; EEOC Aff. ¶ 2; Beidelman Decl. ¶¶ 4, 5, 19).

As a Georgia resident and employee, Plaintiff cannot avail herself of the protections of New York statutes, especially as she does not allege any specific facts to show that she suffered the impact of alleged discrimination in New York.  Plaintiff does not (and cannot) allege that she ever traveled to WBD's New York offices for work or meetings with WBD employees. (Beidelman Decl. ¶ 11).  In her Complaint, Plaintiff makes these vague and conclusory allegations:

> Starting from April 15, 2020 to present, Plaintiff had almost daily contacts and sometimes multiple contacts a day with Defendant WBD's New York City office

via various communications and Zoom meetings with clients, partners, and team members (totaling close to at least 1,000 contacts), attended townhalls based out of the New York City office, and several of Plaintiff's clients are based in New York City. Several members of Plaintiff's team (direct reports and indirect reports) have been based there as well.  In today's new age of remote work, Plaintiff worked just as much in the New York City office remotely as the Georgia office.

(FAC ¶ 13.)  Plaintiff was never directly supervised by any manager who lived in New York or worked in the New York offices of WBD.  (Beidelman Decl. ¶9).  Plaintiff's supervisors were located in North Carolina or California.  (*See* FAC ¶ 80; EEOC Aff. ¶¶4, 69 ("geographically speaking, I am located closest to Ralph [Beidelman]"); Beidelman Decl. ¶¶2, 8, 15).  Plaintiff provides no names or specific information about the location of her team members, her direct and indirect reports or her alleged comparators.  She does not (and cannot) allege that most of these individuals or her assigned business units were located in New York City.  Although Plaintiff's Complaint is not entirely clear on who she alleges are her comparators and for which discrimination claims, her peers worked in California, Tennessee, or London—not New York. (EEOC Aff. ¶57, 69, 93; Beidelman Decl. ¶17).  The Human Resources manager who supported Plaintiff and other Atlanta-based employees during Ms. Lalli's employment worked for WBD in its Atlanta offices.  (Beidelman Decl. ¶16).  Thus, Plaintiff is not covered by either the NYSHRL or the NYCHRL and all her claims under these statutes should be dismissed.

Plaintiff's remaining claims under Title VII, Section 1981, ADEA, ADA, breach of contract, and intentional infliction of emotional distress claims should be transferred to the United States District Court for the Northern District of Georgia, for the convenience of parties and witnesses, and in the interest of justice.  28 U.S.C. § 1404(a). The Northern District of Georgia has personal jurisdiction over Plaintiff since she is a Georgia resident. Additionally, the Northern District of Georgia has jurisdiction over Defendant since it maintains a large office and production campus in Atlanta and employs over 3,500 regular employees in Georgia. (Beidelman Decl. ¶3).

Furthermore, and most importantly, the locus of operative facts is Georgia, since Plaintiff worked for WBD in Georgia and she alleges that she experienced discrimination in Georgia.

Plaintiff's Complaint alleges incomplete facts regarding the filing of her EEOC Charge and Affidavit.  (*See* FAC ¶¶ 5-7).  Plaintiff filed EEOC Charge # 410-2024-02385 and a lengthy Affidavit with the EEOC Atlanta District Office on December 4, 2023.[2]  (*See* FAC ¶ 5; Dent Decl. ¶1, Ex. A).  Although Plaintiff dual filed an identical Charge and Affidavit with the City of Atlanta Human Relations Commission, the New York City Commission on Human Rights ("NYCHRC") and the New York State Division on Human Rights ("NYDHR") two days later, on December 6, 2023, the New York EEOC District Office refused to file her charge.  (FAC ¶ 5; Dent Decl. ¶ 2-3, Ex. B).  The New York EEOC Office notified Plaintiff's counsel that since her charge had been filed with the Atlanta District Office (Charge# 410-2024-02385), the EEOC New York District would not file a duplicate charge and directed counsel to reach out to the Atlanta District office with any questions regarding the charge.  (*See* Dent Decl. ¶3, Ex. C).

The EEOC Atlanta District Office handled Plaintiff's EEOC charge, directing WBD to submit a position statement and respond to a Request for Information.  (Dent Decl. ¶4).  Before the position statement or response to the RFI were due, Plaintiff's counsel requested a Notice of Right to Sue from the Atlanta District Office.  (Dent Decl. ¶4).  Plaintiff's Amended Complaint

---

[2] In considering a motion to dismiss, a district court may consider "not only the assertions made within the four corners of the complaint itself, but also those contained in documents attached to the pleadings or in documents incorporated by reference." *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001); *see also Kramer v. Vendome Grp. LLC*, No. 11 Civ. 5245(RJS), 2012 WL 4841310, at *1 (S.D.N.Y. Oct. 4, 2012). Moreover, records of an administrative agency are public records and contain facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Louis Vuitton Malletier S.A. v. LY USA*, Inc., 676 F.3d 83, 88 (2d Cir. 2012) (quoting Fed. R. Evid. 201(b)(2)); *Lia v. Saporito*, 909 F.Supp.2d 149, 161 (E.D.N.Y.2012) (citations omitted) ("[a]gency determinations and administrative findings are public records of which a court may properly take judicial notice."). It is therefore proper to rely on the documents relied on and incorporated by reference throughout Plaintiff's Amended Complaint here.

does not specify the date that the EEOC sent the Right to Sue Notice or clarify that the Atlanta District Office issued the Notice, although she does attach the Notice to her Complaint. (FAC ¶ 6, Ex. A.) The Notice issued by the EEOC's Atlanta District Office is dated February 6, 2024. (*See id.*; Dent Decl. ¶ 4, Ex. D.) WBD's counsel advised Plaintiff's counsel that Plaintiff had no claims under either the NYSHRL or the NYCHRL because she never worked for WBD in New York and could not have suffered an "impact" in New York, and that venue and jurisdiction should be in the Northern District of Georgia, not the Southern District of New York. (Dent Decl. ¶5, Exs. E and F.)

## II.    STATEMENT OF RELEVANT FACTS

### A.    Overview of Plaintiff's Employment

Plaintiff resides in Georgia and worked out of her Atlanta home throughout her entire employment and "at all relevant times" with WBD's Georgia offices from April 15, 2020 until March 2, 2024. (*See* FAC ¶ 2; EEOC Aff. ¶2; Beidelman Decl. ¶¶4, 5, 19). Plaintiff began working for Turner Broadcasting System, Inc., a subsidiary of Warner Media, LLC on April 15, 2020. (Beidelman Decl. ¶ 4.) While Plaintiff makes the conclusory allegation that she "worked remotely with Defendant WBD's New York City office," she does not and cannot allege any specific facts to support this assertion. (*See* FAC ¶ 2). Plaintiff is a long-time resident of Atlanta, Georgia and worked for another company in Atlanta before she was hired by WarnerMedia. (FAC ¶ 2). During the pandemic when her employment began, Plaintiff worked from her home in Atlanta, Georgia. (*Id.*; Beidelman Decl. ¶5). WarnerMedia and Discovery merged in early April, 2022 to form a new company now known as Warner Bros. Discovery, Inc. (FAC ¶ 16; Beidelman Decl. ¶5). WBD continued its employment of Plaintiff after the merger, and Plaintiff continued to work for WBD in Atlanta, Georgia. (Beidelman Decl. ¶5)

At the beginning of her employment, Plaintiff's supervisor was Jean Ermer, who was then the Senior Vice President of Total Rewards for WarnerMedia and who continued in this role for WBD, through its subsidiary, WarnerMedia Services, LLC, continued its employment of Plaintiff, after the merger, and Plaintiff continued to work for WBD in Atlanta, Georgia. (FAC ¶ 15; Beidelman Decl. ¶5). Ms. Ermer lived and worked for WBD (and previously Warner Media and its subsidiary, Warner Bros.) in Burbank, California until she left WBD's employment in November 2022. (*See* EEOC Aff. ¶14; Beidelman Decl. ¶¶8, 15). Ralph Beidelman, who was also a Senior Vice President, Global Total Awards, became Plaintiff's supervisor in November 2022. (FAC ¶ 49; EEOC Aff. ¶38; Beidelman Decl. ¶¶2, 8). Plaintiff does not allege that Mr. Beidelman worked in the New York offices of WBD while he was her supervisor; instead she states that he was geographically closer to her than any of his other direct reports and that he travelled to the New York offices for meetings. (EEOC Aff. ¶69). In fact, Mr. Beidelman worked from his home in Roper, North Carolina during the entire time he supervised Plaintiff. (Beidelman Decl. ¶7). Plaintiff does not (and cannot) allege that she was ever directly supervised by any manager who lived in New York or worked in the New York offices of WBD. (*See* Beidelman Decl. ¶9).

## B. Plaintiff Has Alleged No Facts To Show She Experienced The Impact of Alleged Discrimination or Retaliation in New York

Plaintiff also does not, and cannot, allege that she ever traveled to WBD's New York offices for work or meetings with any other member of the Compensation team or other WBD employees. (*See* EEOC Aff. ¶70; Beidelman Decl. ¶11). Her communications with her team and her managers were largely via Zoom teleconferences, telephone or email. (FAC ¶ 13; Beidelman Decl. ¶10). Plaintiff does not allege that Mr. Beidelman conducted any work meetings with her or the rest of his team in New York. (EEOC Aff. ¶68; Beidelman Decl. ¶10). On the one occasion

when Mr. Beidelman conducted an in-person meeting with his entire team in September, 2023, he asked his team to travel to WBD's Atlanta offices. (FAC ¶ 80; EEOC Aff. ¶¶68-69; Beidelman Decl. ¶10). Mr. Beidelman also met with the California members of his team in Burbank, California on a few occasions. (FAC ¶ 80; Beidelman Decl. ¶10). Plaintiff attended this meeting by Zoom. (*See* Beidelman Decl. ¶10). Ms. Lalli did not express interest in traveling to Burbank for meetings and attended the team's meetings by Zoom instead. (*See* Beidelman Decl. ¶11). In fact, Plaintiff told Mr. Beidelman and others that she did not want to travel for work or to attend work meetings. (*Id.*) The only time that Plaintiff alleges she met with Mr. Beidelman in person was on September 19, 2023 in the Atlanta, Georgia offices of WBD. (FAC ¶ 80; Beidelman Decl. ¶ 10).

After the pandemic health and safety restrictions were lifted, many employees returned to work in the Atlanta offices of WBD. (Beidelman Decl. ¶ 12). Although Plaintiff was expected to go into the Atlanta offices, she rarely came into the office and instead worked from her home. (Beidelman Decl. ¶ 12). Plaintiff took a medical leave of absence from July 25, 2022 to November 1, 2022 and continued to live in Atlanta, Georgia during her leave. (FAC ¶ 55; Beidelman Decl. ¶ 13). When Plaintiff returned from her leave, Mr. Beidelman told her to do whatever she needed to do as part of her return-to-work, including to continue working from her home in Atlanta. (FAC ¶ 59; Beidelman Decl. ¶ 11). Plaintiff continued to work for WBD in Atlanta until the last day of her employment on March 2, 2024. (FAC ¶¶ 2, 105; Beidelman Decl. ¶ 19).

Plaintiff supported various business units during her employment with WBD. (FAC ¶¶ 21-22; Beidelman Decl. ¶ 14). These business units were primarily located in Atlanta and California. Plaintiff supported the News and Sports business unit, which included CNN and Turner Sports. (*Id.*; Beidelman Decl. ¶ 14). CNN and Turner Sports have long been headquartered in Atlanta,

Georgia.  (*See* Beidelman Decl. ¶ 14). She also supported Technology and Streaming/HBOMax. (FAC ¶ 22; Beidelman Decl. ¶ 14).  Employees of these business units were employed by WBD in Atlanta, Georgia; California; New York and at many other locations nationwide.  (FAC ¶ 22; Beidelman Decl. ¶ 14). The majority of employees in the business units Plaintiff supported were located outside of New York. (Beidelman Decl. ¶14).  Nicole Vaughn was the WBD Vice President of Human Resources who supported Ms. Lalli and other Atlanta-based employees during Ms. Lalli's employment.  (Beidelman Decl. ¶16).  Ms. Vaughn worked for WBD in its Atlanta offices until her employment ended in August 2022.  (Beidelman Decl. ¶ 16).

Plaintiff does not allege how many of her team members worked in New York City or New York and she does not identify any such team members specifically by name.  Most of the Global Total Rewards team in the U.S., both before and after the WBD merger, lived and worked in Los Angeles, California; Atlanta, Georgia; Chicago, Illinois; or other states around the country -- not New York.  (FAC ¶ 80; Beidelman Decl. ¶15).  These compensation team members included Jean Ermer, Jacque Wright, and Renu Jeyakumar, all of whom had worked for the Warner Media Compensation team and before that Warner Bros. in Burbank, California.  (Beidelman Decl. ¶15). Several members of the compensation team lived in London, including Becky Eshalomi and Julie Pateman. Scott Hayes worked for WBD in Knoxville, Tennessee.  (FAC ¶ 104; Beidelman Decl. ¶15).  Joe Song, who was not Plaintiff's manger, lived and worked from Culver City, California from September 2021 forward; he was previously employed in New York.  (Beidelman Decl. ¶15).

### C.    Termination of Plaintiff's Employment with WBD.

In the summer of 2023, Plaintiff proposed a reorganization of the U.S. and Canada compensation consulting team to Mr. Beidelman.  (FAC ¶ 71; EEOC Aff. ¶¶60-61,63; Beidelman Decl. ¶17).  Plaintiff's proposal removed the Vice President of Compensation layer, including her own job, from the team in order to fund additional headcount needed at the time.  (FAC ¶ 71;

EEOC Aff. ¶¶60-61; Beidelman Decl. ¶17).  On August 24, 2023, Mr. Beidelman adopted and implemented parts of Plaintiff's proposal.  (FAC ¶ 74; EEOC Aff. ¶63; Beidelman Decl. ¶17).  As a result, the jobs of Plaintiff and Jacque Wright were both selected for elimination in the reorganization.  (FAC ¶ 74; EEOC Aff. ¶63; Beidelman Decl. ¶17).

WBD made a severance offer to Plaintiff pursuant to WBD's Severance Plan.  (FAC ¶ 74; EEOC Aff. ¶63; Beidelman Decl. ¶18).  After she received the severance offer, Plaintiff began having discussions with Mr. Beidelman about her desire to leave the Company earlier than her March 1, 2024, job elimination date and by the end of 2023.  (FAC ¶ 76; EEOC Aff. ¶65; Beidelman Decl. ¶18).  In September 2023, Plaintiff and Mr. Beidelman corresponded via email regarding her severance and her job elimination date.  (EEOC Aff. ¶¶67-68, 71; Beidelman Decl. ¶18).  Ultimately, Plaintiff elected to remain employed by WBD until March 2, 2024, when her job was eliminated pursuant to the reorganization she proposed.  (Beidelman Decl. ¶18).

## III.    LEGAL ARGUMENT AND CITATION OF AUTHORITIES

### A.    Plaintiff's Amended Complaint Must Be Dismissed Because it Fails to Comply With Fed. R. Civ. P. 8

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 8(a) provides that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The Rule further states that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d).  These requirements are critical "because unnecessary prolixity in pleadings places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Jones v. Nat'l Commc'ns & Surveillance Networks*, 266 F. App'x 31, 32 (2d Cir. 2008) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (summary order).  "Forcing a defendant[] to answer such a pleading would fly in the face of the very process for which Rule 8 exists." *Lonesome v. Lebdeff*, 141 F.R.D. 397 (1992).

As such, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power . . . to . . . dismiss the complaint." *Salahuddin*, 861 F.2d at 42 (dismissing 15-page single-spaced complaint by a plaintiff).

Defendant moves to dismiss Plaintiff's Amended Complaint because it contains conclusory allegations and statements for which Plaintiff cannot state a claim. Plaintiff's Amended Complaint is comprised of 233 paragraphs, many of which span multiple pages and contain multiple sub-parts, largely lacks any chronological continuity, contains numerous irrelevant allegations, and is so repetitive that it is all but impossible to comprehend. There are 116 paragraphs with factual, often conclusory allegations, in the section before the Causes of Action are pled. Other than designating certain groups of paragraphs as "Adverse Actions" and one group of paragraphs as "Adverse Action and Protected Activity," the Amended Complaint makes little attempt to indicate which facts are alleged to support any of the sixteen separate causes of action. Instead, the Amended Complaint begins each cause of action with a boilerplate statement that all preceding paragraphs are repeated and realleged by reference.

Plaintiff's scattershot and prolix Amended Complaint completely fails to comply with Fed. R. Civ. P. 8. Given the lack of organization and conclusory use of legal jargon, Defendants and the Court cannot discern what factual allegations Plaintiff intends to relate to each of her claims. To be sure, this is not a minor procedural defect. A complaint must give a defendant "fair notice" of the claims asserted against him or her, and the ground upon which the claims rest. *Cohn v. Keyspan Corp.*, 713 F. Supp. 2d 143, 153 (E.D.N.Y. 2010). Plaintiff's Complaint deprives Defendants of fair notice of the claims asserted against them.

A pleading of this nature must be dismissed. *See Bahr v. City University of New York/York College*, No. 15-CV-4380 (MKB), 2016 U.S. Dist. LEXIS 171492, *17-19 (E.D.N.Y. Dec. 9,

2016) (dismissing form employment discrimination complaint that included 8-page narrative factual statement and attached a 16-page narrative administrative charge, because it was too difficult to determine the precise claims being asserted and it "would be impossible for Defendants to respond in any meaningful way"); *Reddy v. Catone*, No. 5:13-CV-707 (MAD)(ATB), 2014 U.S. Dist. LEXIS 79622, *7-8 (N.D.N.Y. June 11, 2014) (dismissing 400+ page complaint as prolix where it was needlessly long and contained gratuitous allegations, speculative assertions and legal argument, which "would be enormously wasteful of resources" to sort through), *aff'd* 630 Fed Appx. 120 (2d Cir. 2015) (summary order).  As it would be unfairly burdensome for Defendants to respond to Plaintiff's prolix and non-conforming pleading, Plaintiff's Amended Complaint should be dismissed and Plaintiff should be required to file a Complaint that contains a short and plain statement of her claims.

### B.    Motion to Dismiss

#### 1.    Legal Standard for Motion to Dismiss.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The factual allegations pleaded must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual

allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.; see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). The Supreme Court has stated "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See Iqbal, 556 U.S. 662 at 678; see also Twombly*, 550 U.S. at 555.  While facts must be accepted as alleged, the same is not true with respect to bald assertions, subjective characterizations, or legal conclusions. *See Iqbal*, 556 U.S. at 687 (reversing denial of motion to dismiss for failure to state a claim upon finding that, after conclusory allegations were disregarded, the remaining allegations failed to plausibly establish a claim of discrimination). Thus, a complaint is properly dismissed for failure to state a claim when the plaintiff fails to provide the grounds of his or her entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citation omitted). As discussed below, Plaintiff's eight claims under NYSHRL and NYCHRL fail to state a claim for relief and must be dismissed.

### 2.    Plaintiff's NYSHRL and NYCHRL Claims Must Be Dismissed For Lack of Jurisdiction

Plaintiff's causes of action alleged under the NYSHRL and NYCHRL (Counts 3-4, 6-7, 9-10 and 12-13) must be dismissed because the NYSHRL and NYCHRL are inapplicable to Plaintiff. Plaintiff was a Georgia resident and worked in Atlanta, Georgia during the entire time of her entire employment with WBD.  (*see* FAC ¶ 2; EEOC Aff. ¶ 2; Beidelman Decl. ¶¶ 4, 5, 19).  Plaintiff predominantly worked from her home in Atlanta; to the extent that she went into WBD's offices, she worked in WBD's Atlanta offices.  Plaintiff does not allege that her managers worked in New York City or New York or that she ever traveled to New York for work meetings.  (*See* Beidelman Decl. ¶¶ 9, 11).  Only New York residents may invoke the statutory protections of NYSHRL and

NYCHRL unless a non-resident can demonstrate she suffered an "impact" within the jurisdiction. *See Hoffman v. Parade Pbls.*, 15 N.Y.3d 285, 289-91 (2010) (holding there was no "impact" in New York where the plaintiff resided in Georgia, but attended quarterly meetings in New York City, was managed from NYC, had contracts negotiated through NYC, and the decision to terminate him was made in NYC) *accord Fried v. LVI Servs.*, 500 Fed. Appx. 39, 42 (2d Cir. 2012). *see also Meilus v. Rest. Opportunities Ctr. United, Inc.*, No. 21-CV-02554 (CM), 2021 WL 4868557, at *10 (S.D.N.Y. Oct. 15, 2021) (dismissing plaintiffs' NYSHRL claims and holding there was no "impact" in New York where non-resident plaintiffs regularly traveled to New York for staff meetings and planned events). An "impact" means more than a showing that any alleged discriminatory decisions were made or occurred in New York.  *Id*. at 290-91.

An "impact" also requires more than a "tangential" relationship with New York.  *See Benham v. eCommission Solutions, LLC*, 118 A.D.3d 605, 606 (1st Dept. 2014). "The impact requirement is intended to be relatively simple for courts to apply and litigants to follow, [to] lead[] to predictable results, and [to] confine[] the protections of the NYCHRL and [NYSHRL] to those who are meant to be protected–those who work in [New York]." *Ghorpade v. MetLife, Inc.*, No. 14-CV-4379 JPO, 2014 WL 7008954, at *3 (S.D.N.Y. Dec. 12, 2014) (quoting *Hoffman*, 15 N.Y.3d at 291) (alternations in original).  *See also Robles v. Cox and Co.*, Inc., 841 F. Supp. 2d 615, 623 (E.D.N.Y. 2012) (Spatt, J.) (citations omitted) (It is settled that "[t]o state a claim under the New York City Human Rights Law, the Plaintiff must allege that the Defendant discriminated against her 'within the boundaries of New York City."); *Syeed v. Bloomberg L.P.*, No. 1:20-cv-7464-GHW, 2021 WL 4952486, at *24 S.D.N.Y. Oct. 25, 2021) (quoting *Hoffman*, 15 N.Y.3d at 291) (Woods, J.) ("The obvious intent of the State Human Rights Law is to protect 'inhabitants' and persons 'within' the state.").

Since Plaintiff is not a New York resident or employee and she has not plausibly alleged that she suffered an "impact" in New York or New York City, she cannot avail herself of the protections of NYSHRL or NYCHR.  In her Amended Complaint, Plaintiff attempts to cite alleged contacts with New York through "various communications and Zoom meetings," her attendance at virtual townhalls "based out of the New York City office," the fact that some of "[her] clients were based in New York City," and because some of her team "have been based there as well." (FAC ¶ 13).  These vague allegations do not support any finding that Plaintiff was discriminated against within New York state or New York City.  Moreover, the rest of Plaintiff's Amended Complaint and Plaintiff's EEOC Affidavit makes clear that her vague assertions that her clients and team members were based in New York are exaggerated.  (*See supra* discussion in Section II, pp. 5-9.)  As the *Meilus* court stated, random contact with New York (even including travels to New York City) is insufficient to satisfy the "impact" requirement. *Meilus*, 2021 WL 4868557, at *10.  Indeed, New York courts have consistently held that the NYSHRL and NYCHRL do not protect non-New York resident employees with as tenuous an employment connection to New York as Plaintiff. *See, e.g., Pakniat v. Moor*, 145 N.Y.S.3d 30, 30-31 (2021) (dismissing plaintiff's NYSHRL and NYCHRL claims because plaintiff was a remote employee living and working outside of New York when the alleged conduct occurred and stating that "[t]he fact that the alleged discriminatory acts and unlawful decision to terminate plaintiff's employment occurred in New York is insufficient to plead impact in New York"); *Wolf v. Imus*, 170 A.D.3d 563, 96 N.Y.S. 3d 54, 55 (2019) ("The Supreme Court properly dismissed plaintiff's age discrimination claims brought under the City and State Human Rights Laws, because the impact on plaintiff from the termination of his employment occurred in Florida, where he lived and worked."); *see also Vangas v. Montefiore Medical Center*, 823 F.3d 174, 182-83 (2d Cir. 2016) (finding the district court

properly dismissed NYCHRL claims because there was no impact in New York City where the out-of-state plaintiff's connection to the city was "tangential" and consisted of speaking telephonically with New York City-based patients, who may have been impacted by the plaintiff's termination only after she ceased to work with them).

New York courts have even dismissed NYSHRL and NYCHRL claims brought by plaintiff employees who, *unlike Ms. Lalli*, frequently travelled to New York for their employment or who occasionally worked out of their employers' New York offices. *See, e.g., Meilus v. Restaurant Opportunities Center United, Inc.*, 2021 WL 4868557, at *10-11 (S.D.N.Y. Oct. 15, 2021) (dismissing all of Plaintiffs' NYSHRL claims because regular communication with other employees in New York and even frequent travel to the state were insufficient to establish an impact in New York); *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d at 865 (dismissing Plaintiff's NYSHRL and NYCHRL claims because frequent communications with Defendant's New York office, working with other employees who were located in New York, and occasionally working out of the New York office did not satisfy the impact requirement).

The only New York connection to this dispute is Plaintiff's decision to file her lawsuit here, presumably in an effort to avail herself of the protections of the New York statutes. As a result, Plaintiffs claims under the NYSHRL and NYCHRL must be dismissed.

### C. Plaintiff's Remaining Claims Should Be Transferred To The United States District Court For The Northern District of Georgia.

Plaintiff's remaining claims under Title VII, Section 1981, ADEA, ADA, as well as her alleged breach of the implied covenant of good faith and fair dealing and alleged intentional infliction of emotional distress claims, and alleged unlawful denial of ERISA severance benefits pursuant to Section 502(a)(1)(b) and (a)(3) should be transferred to the United States District Court

for the Northern District of Georgia. Moreover, Georgia law should apply to her state law claims, as discussed below.

For the convenience of parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The purpose of a Section 1404(a) transfer is to "prevent the waste of time, energy and money" and to "protect litigants, witnesses and the public against unnecessary inconvenience and expenses," and is fortified by the overriding principles of convenience and justice. *Van Dusen*, 376 U.S. at 613.

The inquiry on a motion to transfer venue is twofold: (1) whether plaintiff could have brought the case initially in the proposed transferee forum, and (2) whether transfer would promote the "convenience of the parties and witnesses in the interest of justice." *Wyler-Wittenberg*, 899 F. Supp. 2d at 248; *see also Michel*, 404 F. Supp. 3d at 688. "Courts weigh a number of factors in making a § 1404 determination, none of which are singly dispositive." *Id.* at 248-49; *see also Starr Indemnity & Liability Co. v. Brightstar Corp.*, 324 F. Sup. 3d 421, 433-34 (S.D.N.Y. Aug. 16, 2018). The Second Circuit has summarized these factors as follows:

> The private interests have included: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; (6) and the location of the books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

> The public interests have included: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court

congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Starr Indemnity & Liability Co.,* 324 F. Sup. 3d at 431; *see also Wausau*, 522 F.3d at 275 (listing factors for balance of convenience and interest of justice analysis). The Second Circuit has noted that "[t]here is no rigid formula for balancing these factors and no single one of them is determinative.   Instead, weighing the balance 'is essentially an equitable task' left to the Court's discretion." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp.2d 549, 561 (S.D.N.Y. 2000) (citation omitted) (quoting *First Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989). On balance, the factors weigh in favor of transferring this case to the Northern District of Georgia.

### 1.    The Northern District Of Georgia Is A Proper Transferee District

Under the transfer of venue statute, "a district court may transfer any civil action to any other district or division where it might have been brought" for the "convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). As such, a court must initially determine whether an action could originally have been brought in the proposed transferee district court. *Freeman v. Hoffmann-La Roche,* No. 06-13497, 2007 U.S. Dist. LEXIS 23132, at *5-6 (S.D.N.Y. Mar. 21, 2007). As an initial matter, the Northern District of Georgia court has personal jurisdiction over Plaintiff and Defendant WBD.  Plaintiff is a citizen of Georgia, resides in Georgia, and worked for Defendant in Georgia. (FAC ¶ 2; Beidelman Decl. ¶¶ 4, 5, 19).  WBD is a Delaware corporation with offices in Atlanta, Georgia.  (FAC ¶ 3; *see also* EEOC Aff. ¶ 2; Beidelman Decl. ¶¶ 4, 5, 19).  WBD is subject to the personal jurisdiction of Georgia, and agrees it has sufficient minimum contacts to subject to venue and jurisdiction in the federal district court for the Northern District of Georgia.  Moreover, the Northern District of Georgia has federal question subject matter jurisdiction over Plaintiff's Title VII, Section 1981, ADEA, ADA, and ERISA claims, and the

Northern District of Georgia is familiar with federal decisions under these statutes and the Georgia law that should be applied to Plaintiff's claims for breach of the implied covenant of good faith and fair dealing and intentional infliction of emotional distress.

Venue also lies in the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b) because "a substantial part of the events or omissions giving rise to the claim occurred" in Georgia. Plaintiff alleges that discrimination occurred while Plaintiff was working from her home or in WBD's offices in Atlanta, Georgia.

Moreover, under ERISA's venue provision, a claim for ERISA-governed benefits "may be brought in the district where (i) the plan is administered, (ii) where the breach took place, or (iii) where a defendant resides or may be found . . . ." 29 U.S.C. § 1132(e)(2). Most relevant to the inquiry here is the fact that the breach at issue (i.e., the alleged unlawful denial of severance benefits) took place in Atlanta, Georgia, where Plaintiff also resides. Accordingly, venue is proper in the Northern District of Georgia under ERISA's venue provision.

Finally, venue in the Northern District of Georgia is proper pursuant to Title VII's venue provision. In relevant part, this venue provision provides that a Title VII case "may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed . . . ." 42 U.S.C. § 2000e-5(f)(3). Here, Plaintiff does not assert that any of the alleged discrimination was committed in New York. Instead, Plaintiff only alleges that she was subjected to discrimination in Georgia, where she lived and worked for WBD. As such, the Northern District of Georgia is a proper transferee district.

### 2. Interests of Justice Favor Transferring This Case to the Northern District of Georgia

Section 1404(a) is intended to protect litigants, witnesses, and the public against unnecessary inconvenience and expense and to avoid wasted time, energy, and money. *Van Dusen*

*v. Barrack*, 376 U.S. at 616.  Once it is established that the case could have been brought in the transferee court, courts in the Second Circuit evaluate both private and public interests in determining proper venue. *Starr Indemmity & Liability Co. v. Brightstar Corp.*, 324 F. Sup.3d 421, 433-34 (S.D.N.Y. Aug. 16, 2018).  Here, an evaluation of the private and public interest factors in this case all tilt heavily in favor of transferring this matter to the Northern District of Georgia.

### a.    The Private Interest Factors

### (1)    The Parties' Choice of Forum

While a plaintiff's choice of venue ordinarily is afforded deference, circumstances can "diminish th[e] weight" of any such deference.  *Garcia v. Pearson Educ., Inc.*, No. 15 Civ. 7289 (KPF), 2016 WL 5921083, at *6 (S.D.N.Y. Oct. 7, 2016); *JM Smith Corp. v. AstraZeneca Pharms. L.P.*, No. 19 Civ. 7233 (CM), 2020 WL 4605241, at *9 (S.D.N.Y. Aug. 11, 2020).  Two such circumstances are present here.

First, Plaintiff is *not* a citizen of New York, rather she lives in and works out of Georgia (FAC ¶ 2), and Plaintiff "does not have any particular connection to this district." *JM Smith*, 2020 WL 4605241, at *9 (granting motion to transfer venue and noting that a plaintiff's lack of connection to the district does not favor retention).  Accordingly, less deference should be paid to Plaintiff's choice of forum.  *Id.*; *CVS Pharmacy, Inc. v. AstraZeneca Pharms., L.P.*, No. 19-cv-10049 (CM), 2020 WL 4671659, at *7 (S.D.N.Y. Aug. 12, 2020) (holding that where none of the multiple plaintiffs reside in the forum district, it "diminishes the deference afforded [their] choice to litigate here"); *Dickerson*, 315 F.R.D. 18, 32 (S.D.N.Y. 2016) (holding that where "the forum selected is not plaintiff's home forum," less weight is assigned to this factor) (quoting *McGraw–Hill Companies Inc. v. Jones*, No. 12–cv–7085 (AJN), 2014 WL 988607, at *7 (S.D.N.Y. Mar. 12, 2014)).

Second, this litigation has no meaningful connection to New York. Plaintiff is a resident of Georgia, and that is where the only timely claims allegedly occurred.  (FAC ¶ 2).  Indeed, Plaintiff worked in Georgia for the entirety of her employment. Plaintiff appears to have selected the Southern District of New York in an attempt to avail herself of the protections of the NYCHRL and NYSHRL, which do not apply to her.  Where "the operative facts of the action occurred" elsewhere, *Dickerson*, 315 F.R.D. 18, 32 (S.D.N.Y. 2016) (quoting *McGraw–Hill*, 2014 WL 988607, at *7), little weight should be given to plaintiff's chosen forum.  *See de Fries v. Wells Fargo Bank N.A.*, No. 20-CV-10247 (CM), 2020 WL 8512859, at *2 (S.D.N.Y. Dec. 7, 2020) (granting defendant's motion to transfer and noting that the "underlying events" occurred in the transferee district).  Under these circumstances, this Court should give little or no consideration to what appears to be Plaintiff's forum shopping.

### (2) The Convenience of the Parties Weighs in Favor of Transfer to the Northern District of Georgia

"The convenience of the parties favors transfer when transfer would increase convenience to the moving party without increasing the inconvenience to the non-movant." *Dickerson*, 315 F.R.D. at 29 (quoting *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F.Supp.3d 385, 399 (S.D.N.Y. 2014)). Courts are careful not to simply "swap[] one party's inconvenience for another's" when deciding transfer motions. *ESPN v. Quicksilver, Inc.*, 581 F. Supp. 2d 549-50 (S.D.N.Y. 2008). In this case, transfer would be more convenient for *all* parties to this case, including Plaintiff. *See Fuji Photo*, 415 F. Supp. 2d at 374 (noting that the proposed transfer would make the litigation more convenient for the party opposing transfer and considering that fact when deciding a transfer motion).  Plaintiff lives in Atlanta, Georgia within the jurisdiction of the Northern District of Georgia.  (FAC ¶ 2). *Chiste*, 756 F. Supp. 2d at 400-01 (noting that transfer of the case to plaintiff's home state would "presumably" be the "less costly option"). The only conceivable contact Plaintiff

could offer with this District is that her counsel is closer to New York, but "[t]he convenience of counsel is not an appropriate factor to consider on a motion to transfer." *Fuji Photo*, 415 F. Supp. 2d 370 at 374 (quoting *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F.Supp.2d 433, 438 (S.D.N.Y. 2000)); *Dickerson*, 315 F.R.D. at 29 (disregarding the location of plaintiff's counsel, and noting that "the convenience of counsel is not of particular importance"). Accordingly, since Plaintiff's own residence strongly favors transfer and Defendant maintains a large office and production campus in Georgia and employs over 3,500 regular employees in Georgia, transfer to the Northern District of Georgia conveniences all parties. *See Paulson v. Guardian Life Insurance Company of America*, 614 F. Supp. 3d 1, 8 (S.D.N.Y. 2022) (transferring case to the Eastern District of Virginia, in part, because the Court determined it would be more convenient for the plaintiff to litigate the case in her state of residence).

### (3) Plaintiff's Claims Arose in the Northern District of Georgia

"The location of operative facts is a primary factor in determining a § 1404(a) motion to transfer. . . . To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *Dickerson*, 315 F.R.D. at 30 (cleaned up); *Fireman's Fund Ins. Co. v. Pers. Communs Devices, LLC*, No. 09-cv-1349(SHS), 2009 WL 10666098, at *3 (S.D.N.Y. July 9, 2009) (noting that the locus of operative facts factor "helps the court identify a suit's 'center of gravity,' and thus, where it should properly proceed") (quoting *Foothill Capital Corp. v. Kidan*, No. 03 Civ. 3976, 2004 U.S. Dist. LEXIS 3634, at *5 (S.D.N.Y. Mar. 8, 2004)). In employment discrimination cases, the factors used to determine the locus of operative facts include where plaintiffs were employed, where they complained of discrimination, where they were denied promotions and pay raises, and where they were given negative performance evaluations. *Id.*; *Garcia*, 2016 WL 5921083, at *7 (noting that the locus of operative facts is where the

discriminatory conduct occurred). "Where there is no material connection between the district and the operative facts . . . the interests of justice require transfer of [the] action." *Brown v. Dow Corning Corp.*, No. 93CIV.5510(AGS), 1996 WL 257614 (S.D.N.Y. May 15, 1996) (cleaned up) (quoting *Mobile Video Servs., Ltd. v. National Ass'n of Broadcast Employees and Technicians*, AFL-CIO, 574 F. Supp. 668, 671 (S.D.N.Y. 1983)); *Everlast*, 928 F. Supp. 2d at 745 ("A transfer to a district where the key operative events occurred serves the interests of justice.") (quotations omitted).

Here, there is no meaningful connection between New York and the events that give rise to Plaintiff's allegations. At all relevant times, Plaintiff did not live or work in New York. Plaintiff does not allege that her managers were located in New York. The "impact" of her alleged discrimination, as that term has been interpreted under both the NYSHRL and the NYCHRL, could not have been felt in New York. *See Hoffman*, 15 N.Y.3d at 289-91 (2010). Similarly, it is undeniable that the "impact" of the adjudication of Plaintiff's claim for ERISA benefits was allegedly felt in Georgia, not New York. As such, there can be no question that the operative facts in this action arose in Georgia, where Plaintiff resides and worked and where she was located when she interacted with her managers and team.

### (4) The Convenience of Witnesses Weighs in Favor of Transfer to the Northern District of Georgia

The "convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *Paulson*, 614 F. Supp. 3d at 9, quoting *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 29-30 (E.D.N.Y. 2014). Here, as stated above, Plaintiff resides in Georgia and lived and worked in Georgia throughout her employment with WBD. Further, Plaintiff does not allege which witnesses, if any, are located in New York. Even if there are potential witnesses located in New York, "[t]he Court does not

'merely tally' the number of witnesses that reside in each forum, but rather must 'qualitatively evaluate the materiality of the testimony' from each of the witnesses. *Dickerson*, 315 F.R.D. at 28, quoting *Herbert Ltd. Partnership v. Electronic Arts, Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004). Any potential witnesses located in New York are unlikely to provide material testimony in this case. In contrast, Plaintiff's managers and others who worked with her and were directly involved in the facts alleged throughout the Complaint – most of whom are now non-party witnesses and none of whom are located in New York – can be expected to provide material testimony. *Id.*; *see also supra* discussion in Section II, pp. 5-7. Ralph Beidelman, who was Plaintiff's supervisor for last sixteen (16) months of her employment, lives in North Carolina, which is closer to Atlanta than New York. (FAC ¶ 80; EEOC Aff. ¶69; Beidelman Decl. ¶¶2, 7). Accordingly, this factor weighs heavily in favor of transfer to the Northern District of Georgia. *See Guardian Life Insurance Company of America v. Coe*, 2024 WL 1161361, at *5 (S.D.N.Y. March 19, 2024) (granting motion to transfer where the critical witnesses did not reside in New York and lived in various other locations).

### (5)    The Location of Relevant Documents and the Relative Ease of Sources of Proof

While the location of documents and other sources of proof has traditionally been a significant factor in transfer motions, "[i]n an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly." *ESPN*, 581 F. Supp. 2d at 549; *Tlapanco v. Elges*, 207 F. Supp. 3d 324, 330-31 (S.D.N.Y. 2016) ("The location of relevant documents and the ease of access to sources of proof is mostly a neutral factor, in light of 'the technological age in which we live, where there is widespread use of, among other things, electronic document production.'") quoting *Rindfleisch v. Gentiva Health Sys. Inc.*, 752 F. Supp.

2d 246, 258 (E.D.N.Y. 2010); *see also Guardian Life Insurance Company of America*, 2024 WL 1161361, at *5.  As such, this is a neutral factor.

> **b.**    **The Public Interest Factors Favor Transfer to the Northern District of Georgia.**

Under the "interest of justice" component of Section 1404(a), courts typically focus their inquiry on which forum can most efficiently resolve the dispute. *See e.g.*, *In re Lehman Bros. Holdings Inc.*, 594 B.R. 33, 52 (Bankr. S.D.N.Y. 2018); *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 397 (S.D.N.Y. 2014). As noted above, because the parties, including Plaintiff, are located in Georgia, practical considerations strongly favor transfer to Georgia. (*See e.g.,* FAC ¶ 2; EEOC Aff. ¶ 2; Beidelman Decl. ¶¶ 3, 5, 19). Moreover, while Plaintiff is entitled to litigate her claims, she is not entitled to create inefficiencies and waste the judicial resources of a District in which she does not even reside. Any argument from Plaintiff opposing the transfer of her ERISA claim to Georgia ignores the practical realities and judicial efficiencies favoring transfer. By transferring all of Plaintiff's remaining claims, rather than allowing Plaintiff to split her claims between courts, the Northern District of Georgia will be able to efficiently resolve this dispute in its entirety.

Further, local interests strongly favor allowing the Northern District of Georgia to decide this cause of action which arose out of actions and employment in Georgia.  Courts in the Second Circuit have considered whether a forum has a "'local interest' in a dispute, such that it would be appropriate for that forum to adjudicate the dispute." *Starr*, 324 F.Supp.3d 521 at 442.  The Northern District of Georgia has a greater interest than the Southern District of New York in this case, as Plaintiff is a Georgia resident and all of her claims allegedly arose while she worked from her home in Georgia.  The only alleged New York connection to this dispute is Plaintiff's inexplicable decision to file her lawsuit here and Plaintiff's vague and insufficient allegations that

she communicated and attended Zoom meetings with other employees who were in New York. (FAC ¶ 13). Here, the real dispute is whether Plaintiff suffered discrimination while working in Georgia, not New York, and the denial of severance benefits when her employment ended. Thus, the public interest favors transferring this matter to the Northern District of Georgia.

### (1)    The Forum's Familiarity with the Governing Law.

Assuming Plaintiff's New York claims are dismissed for lack of jurisdiction, Plaintiff's remaining claims would be under federal law (*i.e.*, Title VII, Section 1981, ADEA, ADA, and ERISA), and for breach of an alleged implied contract and intentional infliction of emotional distress. The Northern District of Georgia, as a federal court, is equally capable of presiding over the federal claims. *Dickerson*, 315 F.R.D. at 32 ("The majority of Plaintiffs' claims raise questions of federal law, which either forum is equally capable of deciding."). In addition, the Northern District of Georgia court will be more familiar with the state common law applicable to Plaintiff's claims for breach of the implied covenant of good faith and fair dealing and intentional infliction of emotional distress. *See Burges v. Allstate Ins. Co.*, 334 F. Supp. 2d 1351 (N.D. Ga. 2003) ("Georgia adheres to the traditional rules of *lex loci contractus*, that contracts are governed as to their nature, validity, and interpretation by the law of the place where they were made . . . ."); *Bullard v. MRA Holding, LLC*, 292 Ga. 748, 750-51 (2013) (explaining "a tort action is governed by the substantive law of the state where the tort was committed" and "[t]he place where the tort was committed, or, the locus delicti, is the place where the injury was sustained . . . .") (internal quotations omitted). Here, the alleged breach and injury complained of by Plaintiff occurred in Georgia, not New York. As such, Georgia law will apply and the Northern District of Georgia's familiarity with the applicable state law favors transferring this matter. *See Phillips v. Reed Group, Ltd.*, 955 F. Supp. 2d 201, 236 (S.D.N.Y. 2013) (explaining that where state law may govern in an action, transfer to a federal court within that state is favored); *Royal Ins. Co. of America v. United*

*States*, 998 F. Supp. 351, 355 (S.D.N.Y. 1998) ("Federal courts have generally favored adjudication of a controversy by the court which sits in the state whose law will provide the rules of decision.") (quoting *In re Eastern District Repetitive Stress Injury Litigation*, 850 F. Supp. 188, 196 (E.D.N.Y. 1994)).

### (2)    Relative Means of the Parties.

While the relative means of the parties is often cited to oppose transfer, the relative means factor supports transfer in this case. Plaintiff lives in the proposed transferee forum; a transfer would make this litigation far more economical for her.

## IV.    CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion to dismiss Plaintiff's Amended Complaint pursuant to Rule 8 and Defendants' motion to dismiss Counts 3-4, 6-7, 9-10 and 12-13 pursuant to Rule 12(b)(6). The Court should also grant Defendants' motion to transfer Plaintiff's remaining claims in Counts 1-2, 5, 8, 11, and 14-17 to the United States District Court for the Northern District of Georgia.

Dated: November 25, 2024

New York, New York

LITTLER MENDELSON, P.C.


By:/s/ *William J. Anthony*

William J. Anthony
wanthony@littler.com
900 Third Avenue
New York, NY  10022.3298
Telephone:  212.583.9600
Facsimile:  212.832.2719


Leslie A. Dent (*pro hac vice*)
ldent@littler.com
LITTLER MENDELSON, P.C.
3424 Peachtree Road N.E.
Suite 1200
Atlanta, GA  30326.1127
Telephone:      404.233.0330
Facsimile:      404.233.2361

Attorneys for Defendant